

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**08/29/2012**

| | | |
|---|---|---|
| IN RE: | § | **Case No. 12-30062** |
| **KIMBERLY RANDLE-JOHNSON; aka** | § | **Chapter 13** |
| **RANDLE,** | § | |
| Debtor(s). | § | **Judge Isgur** |

### MEMORANDUM OPINION

Creditor Rex Rexilius moves for compensatory and punitive sanctions against Kimberly Randle-Johnson, asserting that Randle-Johnson violated the terms of an agreed order for the surrender of property. Rexilius alleges that Randle-Johnson violated the order when she removed certain fixtures on which he held a lien. Although Randle-Johnson removed some fixtures, she did not do so maliciously. Rather, she misunderstood the Court's order. Accordingly, the Court award compensatory sanctions. Punitive sanctions are not appropriate.

### Background

On March 6, 2012, the Court entered an agreed order, signed by Randle-Johnson and Rexilius, for the surrender of Randle-Johnson's property at 5914 Grape Street, Houston, Texas. ECF No. 40. The order stipulated that Rexilius held a valid first lien on the property and had posted the property for foreclosure. ECF No. 40, at 1. Under the order, Randle-Johnson was allowed to remain in the property until April 2, 2012. ECF No. 40, at 1. Among other requirements, Randle-Johnson was to "keep the Property in the same condition as it existed on the date of this Agreed Order." ECF No. 40, at 2. The order also provided that Randle-Johnson "agree[d] not to remove any fixtures of the Property, including but not limited to the stove, Furdown air conditioning unit, water heater, ceiling fans, blinds and light fixtures." ECF No. 40, at 2.

On May 11, 2012, Rexilius filed a motion for sanctions. ECF No. 48. Rexilius alleged that when Randle-Johnson moved out of the property, she removed the fur down air conditioning unit, window air conditioning units, and light fixtures. ECF No. 48, at 2. Rexilius also alleged that

Randle-Johnson left furniture, clothes, food, and other items in the house, requiring extensive cleaning.  ECF No. 48, at 3.

A hearing was held on August 2, 2012.  Rexilius, Matt Manning, Randle-Johnson, and Marcus Johnson testified.  Mynde Eisen testified with respect to legal fees and expenses.

The Court stated at the hearing that the issue was whether Randle-Johnson removed a fixture in violation of the order.  The evidence was clear that Randle-Johnson had removed an air compressor, light fixtures, and a window air conditioner unit.  The light fixtures were of nominal value, and Rexilius testified that he had not replaced them.  The Court will award $20.00 for the removal of the light fixtures.  The Court found that the window air conditioner unit was not a fixture. The window unit was easily removable from the house, and it was not intended to remain a permanent part of the structure of the house.  Randle-Johnson bought the window unit, and she was allowed to remove it.

Randle-Johnson left trash at the house, but the agreed order did not require Randle-Johnson to clean the house.  There was no evidence that she left trash in the house maliciously on account of the Court's order.  Randle-Johnson did not violate the order by leaving trash in the house.  Although there was evidence that Randle-Johnson left the property in bad condition, the evidence also indicated that the property was in bad condition as of the date of the order.  The order required Randle-Johnson to leave the property in the same condition, not in good condition.

The remaining issue after the hearing was whether the removal of the external air compressor violated the agreed order.

The Court gave the parties one week to file briefs on the issue of whether the outside air compressor unit was a fixture.  Rexilius filed a brief on August 13, 2012, arguing that the outside air compressor was part of the fur down air conditioning unit and was a fixture.  Rexilius attached an

affidavit of James Clerk, stating, "A furred down air handler consists of an outside condenser and the air handler."  ECF No. 63, at 4.

The Court does not consider the affidavit.  Rexilius had an opportunity to present evidence at the hearing, and the Court does not reopen the evidentiary record.  The Court's order barred the removal of any fixtures.  The issue for the Court is whether the outside compressor was a fixture.

## Analysis

The outside air compressor was a fixture, and therefore Randle-Johnson violated the order when she removed the air compressor.

A fixture is something that is personal in nature, but annexed to realty as to become part of the realty.  *Houston Building Serv., Inc. v. Am. Gen. Fire & Cas. Co.*, 799 S.W.2d 308, 311 (Tex. App.—Houston [14th Dist.] 1990, writ denied).  "Three factors are relevant in determining whether personalty has become a fixture, that is, a *permanent* part of the realty to which it is affixed:  (1) the mode and sufficiency of annexation, either real or constructive; (2) the adaptation of the article to the use or purpose of the realty; and (3) the intention of the party who annexed the chattel to the realty."  *Logan v. Mullis*, 686 S.W.2d 605, 608 (Tex. 1985); *Citizens Nat'l Bank v. City of Rhome*, 201 S.W.3d 254, 257 (Tex. App.—Fort Worth 2006, no pet.).  The third criterion dealing with intention is preeminent, whereas the first and second criteria constitute evidence of intention.  *Id.*  Intent is made apparent by objective manifestations.  *Id.*  "Another accepted test frequently employed to determine the existence of a fixture is whether the item can be removed without injury to the realty."  *W.H.V., Inc. v. Assocs. Housing Fin., LLC*, 43 S.W.3d 83, 88 (Tex. App.—Dallas 2001, pet. denied).

An air compressor is generally a fixture because it is attached to the house and used for the purpose of enhancing the condition of the house.  *See C.W. 100 Louis Henna, Ltd. v. El Chico Restaurants of Tex., L.P.*, 295 S.W.3d 748, 756 Tex. App.—Austin 2009, no pet.) (holding that air conditioning units were trade fixtures, a subcategory of fixtures); *In re Marriage of Kerr*, 2009 WL

3000977, at *3 (Tex. App.—Houston [14th Dist] 2009, no pet.) (holding that party violated an order enjoining him from causing damage to home or reducing the value or use of the home when he removed an air condenser and replaced it with a smaller, inoperable condenser); *Houk Air Conditioning, Inc. v. Mortgage & Trust, Inc.*, 517 S.W.2d 593, 595 (Tex. Civ. App.—Houston [1st Dist.] 1974, reh'g denied) (finding that "a furnace, an air conditioning coil, compressor, thermostat and condensing unit . . . . were fixtures incorporated into the structure of the building" and thus subject to a mechanic's or materialman's statutory lien).

First, the Court looks at whether there has been real or constructive annexation. To determine whether there has been real or constructive annexation, courts consider whether the property could be removed without materially damaging the property. *See Houston Building Serv.*, 799 S.W.2d at 311 (holding that doors and frames were fixtures because they could not be removed without devaluing the building). Rexilius testified that he had replaced the air compressor. The cost of a new unit, such as the one Randle-Johnson removed, was approximately $3500; Rexilius installed a cheaper unit. The house would have been a materially less comfortable living environment without the air compressor. The Court therefore concludes that it could not be removed without materially damaging the house.

Second, the Court looks at whether the air compressor was adapted to the use or purpose of the realty—a home. The air compressor's purpose was to enhance the living environment of the home. The Court therefore concludes that the air compressor was adapted to the use of the realty. *See Gorman v. Meng*, 335 S.W.3d 797 (Tex. App.—Dallas 2011, no pet.) (holding that, for purposes of a real property owner's liability for the acts of an independent contractor, the installation of a refrigeration system, including a walk-in cooler and condenser, "evidenced [the property owner's] intent that the cooler and condenser be annexed to the realty").

Finally, the Court considers the intention of the party who annexed the air compressor to the realty.  Randle-Johnson testified that she bought the outside compressor in June 2011.  She bought the compressor when the old compressor failed.  She was the owner of the home at the time that she purchased the compressor.  Although Randle-Johnson testified that she believed she was allowed to remove the compressor because she had purchased it, those statements provide no illumination into her original intent when installing the compressor.

The Court therefore focuses on objective evidence of Randle-Johnson's intent.  The first and second factors are objective evidence of intention.  Because both the first and second factors weigh towards finding that the air compressor was a fixture, the Court concludes that the air compressor was a fixture.

Rexilius testified that the air compressor, which was a few months old, was worth approximately $3,500.00.  Rexilius spent $500.00 to replace the removed air compressor with a used unit.  Rexilius' Ex. 19.  The Court finds that Rexilius incurred damages of $1,000.00 as a result of Randle-Johnson's removal of the air compressor.  This $1,000.00 is a reasonable estimate because Rexilius now (for his expenditure of $500.00) has an older compressor.  Of course, had Randle-Johnson not removed the unit, Rexilius would have only owned a used (although less used) compressor.  The Court finds $1,000.00 to be reasonable.

Rexilius provided evidence of the fees incurred through Randle-Johnson's bankruptcy cases.  Rexilius' counsel, Mynde Eisen, testified that the fees incurred between April 4, 2012 and June 12, 2012 were related to the motion for sanctions.  Eisen testified that she had spent an additional 7 hours preparing for the hearing, in addition to the time spent at the hearing (approximately an hour and a half), at a rate of $375.00 per hour.  Based on the $2,264.50 incurred up to the time of the hearing and the additional $3,187.50 incurred for the 8.5 hours of preparation and time at the hearing, Rexilius incurred $5,452.00 in fees to file and prosecute the motion for sanctions.  Eisen testified that

Rexilius had incurred $145.30 of expenses in filing the motion for sanctions. However, Rexilius sought compensation for far more than $1,000.00. He has prevailed on only a portion of his claim. The Court awards $2,000.00 in fees and $145.30 in expenses.

**Conclusion**

Randle-Johnson violated the order when she removed the air compressor and the light fixtures. The Court has the authority to award sanctions to compensate Rexilius for the losses he sustained as a result of Randle-Johnson's contempt. *Local 28 of Sheet Metal Workers' Int'l Ass'n v. EEOC*, 478 U.S. 421, 443 (1986). The Court therefore awards damages of $1,000.00 for the removal of the air compressor and $20.00 for the removal of the light fixtures. The Court also awards $2,145.30 in legal fees and expenses. The Court awards total sanctions of $3,165.30 against Randle-Johnson. This amount is solely compensatory. No punitive damages are awarded.

SIGNED **August 28, 2012.**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE